FJN:NDB/RMP
F.# 2023R00222/OCDETF #NY-NYE-865

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                    23-CR- 257 (S-1) (ARR)

      - against -

MILOS RADONJIC,
      also known as "Pirate of the Unknown" and
      Sky ECC pin 3E403E,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## THE GOVERNMENT'S DETENTION MEMORANDUM


BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Nomi Berenson
Robert Pollack
Assistant United States Attorneys
(Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in support of its motion for a permanent order of detention for the defendant Milos Radonjic, who is scheduled to be arraigned on July 27, 2024, on the above-captioned first superseding indictment, following his extradition from Italy.  On September 15, 2023, a grand jury sitting in the Eastern District of New York returned a superseding indictment charging the defendant with international conspiracy and attempt to violate the Maritime Drug Law Enforcement Act ("MDLEA").  That same day, an arrest warrant was issued for the defendant's arrest.

On October 6, 2023, Radonjic was arrested by Italian authorities at the government's request pursuant to a provisional arrest warrant.  On November 14, 2023, the government submitted a request to Italian authorities for the defendant's extradition.  Following contested extradition proceedings in Italy, the Italian Ministry of Justice granted the United States' request and, earlier today, Italy extradited the defendant to the United States.  For the reasons set forth below, at the defendant's initial appearance and arraignment, the Court should enter a permanent order of detention, as no condition or combination of conditions can secure the defendant's appearance at trial and the safety of the community.

STATEMENT OF FACTS[1]

       This case stems from an extensive federal investigation into the criminal activities of a vast international narcotrafficking conspiracy responsible for transporting multi-ton loads of cocaine.  The defendant and his co-conspirators used commercial container maritime vessels that transited from South America to Europe to transport cocaine for cartels in the Balkans.

       In coordination with the defendant, members of the conspiracy planned and attempted to load commercial cargo ships at night on the high seas near the coast and ports of Colombia and Ecuador, working with crewmembers who would hoist loads of cocaine from speedboats as they approached the ships at multiple points along their route.  To physically load the cocaine aboard, the conspiracy planned to use the ship's cranes as well as nets.  Once the cocaine was onboard, the crewmembers would secretly conceal the cocaine aboard the vessel.  This complex operation relied on the defendant and his co-conspirators having access to the ship's crew, route, manifest, real-time positioning and geolocation data.

       Lawfully intercepted encrypted electronic communications of Radonjic and co-conspirators make plain that they agreed and planned to load narcotics aboard a United States covered vessel (the "Ship").  During this time, Radonjic and his co-conspirators organized and arranged three separate attempts to load the Ship with a total of more than 2,500 kilograms of cocaine in Ecuador and off the coast of Colombia, using the assistance of corrupt crewmembers onboard the Ship.  Among the intercepted communications are several of Radonjic's, in which he

---

[1]    As permitted by the Second Circuit, the government proceeds by factual proffer in support of its motion for a permanent order of detention.  See United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000); United States v. Ferranti, 66 F. 3d 540, 542 (2d Cir. 1995).  As this proffer seeks only to articulate facts sufficient to justify detention, it is not a complete statement of all the evidence of which the government is aware or which it will seek to introduce at trial.

explained that the corrupt crew aboard the Ship would use a crane to load the cocaine, as

depicted in the following photograph:



Radonjic also sent the three photographs copied below to his co-conspirators, in which he

explained the method and route in which go-fast boats carrying the cocaine from the coasts of

Ecuador and Colombia needed to approach the Ship on which the organization was planning to

secrete cocaine so that the go-fast boats would avoid the Ship's radar detection and reach the

Ship's crane to load the cocaine.






Radonjic also circulated amongst his co-conspirators the hourly geographic coordinates of where the Ship was expected to be so that the go-fast boats could rendezvous with the Ship while the Ship continued on its route without slowing, stopping, or deviating.

In short, this evidence shows that Radonjic played a key role in coordinating communication and logistical considerations amongst various members of the conspiracy who

5

planned and attempted to load significant shipments of cocaine aboard a commercial maritime vessel. Indeed, he was integral to the organization's plans, and he employed and demonstrated sophisticated knowledge of maritime vessels.

On September 15, 2023, a grand jury sitting in the Eastern District of New York indicted the defendant for one count of conspiracy to violate the MDLEA and one count of attempt to violate the MDLEA, in violation of Title 46, United States Code, Sections 70503(a)(1), 70503(b), 70504(b)(2), 70506(a), 70506(b) and 70507(a), and Title 21, United States Code, Section 960(b)(1)(B)(ii). Each count that the defendant faces a mandatory minimum term of ten years' imprisonment and a potential life sentence.

The defendant is a citizen of Montenegro without legal immigration status in the United States. He has only ever entered the United States fleetingly and in connection with his working as a crewmember aboard commercial maritime vessels. He was apprehended in Italy and has no known ties to the United States.

<u>ARGUMENT</u>

I.    <u>Legal Standards</u>

Under the Bail Reform Act, 18 U.S.C. §§ 3141 <u>et seq.</u>, a federal court must order a defendant detained pending trial where it determines that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A presumption of dangerousness and risk of flight arises when a defendant is charged with an offense under the Controlled Substances Act or the Controlled Substances Import and Export Act that carries a maximum term of imprisonment of 10 years or more and the Court finds probable cause to believe that the defendant committed such offense. 18 U.S.C. § 3142(e)(3)(A). Probable cause may be

established by the sheer fact that a grand jury has returned an indictment charging the defendant

with the offense in question.  See United States v. Contreras, 776 F.2d 51, 54–55 (2d Cir. 1985).

The presumption means that the Court must initially assume there is "no condition

or combination of conditions that will reasonably assure the appearance of the person as required

and the safety of the community."  18 U.S.C. § 3124(e)(3).  The defendant may rebut this

presumption by coming "forward with evidence that he does not pose a danger to the community

or a risk of flight."  United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam).  If

this burden of production is satisfied, the government retains the burden of persuasion by clear

and convincing evidence that the defendant presents a danger to the community and by a

preponderance of the evidence that the defendant presents a risk of flight.  See 18 U.S.C.

§ 3142(f); Mercedes, 254 F.3d at 436; United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987);

United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

The concept of "dangerousness" encompasses not only the effect of a defendant's

release on the safety of identifiable individuals, such as witnesses, but also "'the danger that the

defendant might engage in criminal activity to the detriment of the community.'"  United States

v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).  Indeed—and

significantly—danger to the community includes "the harm to society caused by [the likelihood

of continued] narcotics trafficking."  United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985).  In

considering risk of flight, courts have found that where the evidence of guilt is strong, it provides

"a considerable incentive to flee," United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993), as

does the possibility of a severe sentence, see United States v. Jackson, 823 F.2d 4, 7 (2d Cir.

1987); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with

serious offenses with significant maximum terms had potent incentives to flee); see also United

States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was flight risk because her knowledge of seriousness of charges against her gave her strong incentive to abscond to Mexico).

Courts consider several factors in making the determination of whether pretrial detention is appropriate: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, and past conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release.  See 18 U.S.C. § 3142(g).  Even where the defendant has met his burden of production to rebut the statutory presumption in favor of detention, the presumption also remains a factor for the Court to consider.  Mercedes, 254 F.3d at 436.

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means.  See 18 U.S.C. § 3142(f)(2); see also LaFontaine, 210 F.3d at 130-31.  In the pre-trial context, few detention hearings involve live testimony or cross-examination.  Most proceed on proffers.  See id. at 131.  This is because bail hearings are "typically informal affairs, not substitutes for trial or even for discovery."  Id. (internal quotation marks omitted).  Indeed, the Second Circuit has reversed district courts where they have not credited the government's proffer, including proffers with respect to a defendant's dangerousness. See, e.g., Mercedes, 254 F.3d at 437 ("[Defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [defendant]'s dangerousness.").

II.     A Presumption of Detention Applies

This case involves offenses for which there is a presumption that no combination of conditions will reasonably assure the defendant's appearance or the safety of the community. See 18 U.S.C. § 3142(e)(3).  Specifically, because the defendant is charged with multiple counts under the MDLEA for which the maximum term of imprisonment is life, he is presumed to pose a danger to the community and a risk of flight.  Accordingly, the defendant bears the initial burden of showing that he is not a danger to the community or a flight risk.  For the reasons set forth below, the defendant cannot sustain that burden.

III.    The Defendant Poses a Significant Risk of Flight

The Defendant should be detained because he is presumed a flight risk and no conditions or combination of conditions can assure his appearance at trial.  The prospect of a term of life in prison in the United States creates a powerful incentive for the defendant—a man with no ties to the United States—to flee should he be released on bond.  See, e.g., 21 U.S.C. § 960(b)(1)(B)(ii) (carries a mandatory minimum sentence of ten years and a maximum sentence of life).  When the incentive to flee is so strong, no combinations of sureties and other restrictions can assure a defendant's appearance.  See, e.g., United States v. English, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant was charged under § 924(c), faced a presumption against release, and a mandatory minimum sentence that incentivized fleeing); United States v. Henderson, 57 F. App'x 470, 471 (2d Cir. 2003) (summary order) ("[T]he presumption regarding flight risk has changed because [the defendant] now faces a ten-year mandatory minimum sentence.").  If released, the defendant could access his far-flung co-conspirators to help him escape to any number of countries where extradition would be unlikely.

The defendant is a citizen and resident of Montenegro who was arrested upon his arrival in Italy while there for a sailing event.  The defendant has no history of traveling to the United States aside from a handful of brief entrances and exits years ago in connection with his status as a crewmember aboard commercial maritime vessels.  He has no family ties to the United States, or any other significant connection to the United States.  He has no legal status in the county.  He has strong and continuing ties to Montenegro, where he resides, and from where he cannot be extradited.  Given the absence of any connection to the United States and his extensive ties to Montenegro, the defendant constitutes a significant flight risk.  For example, the defendant could return to his home country of Montenegro, which will not extradite its own citizens.  See, e.g., United States v. Hebroni, 37 Fed. App'x 549, 550 (2d Cir. 2002) (summary order) (reversing district court order granting bail where the defendant was charged with money laundering offenses such that the defendant faced "a sentence far exceeding the time she has already spent in detention; she lacks any ties to the United States; she has significant ties to other countries; it is questionable whether the United States could extradite her if she flees"); United States v. Boustani, 356 F. Supp. 3d 246, 255 (E.D.N.Y. 2019) (citing defendant's "complete lack of ties to the United States, and extensive ties to foreign countries without extradition" as demonstrative of defendant's serious risk of flight).

Were the defendant to return to Montenegro, it would be nearly impossible for the United States to apprehend him.  There is this significant risk that the defendant's return to Montenegro would ensure that he does not face justice in an American courtroom.  Cf. Boustani, 356 F. Supp. 3d at 255 (citing defendant's 'extensive ties to foreign countries without extradition" as demonstrating defendant's "serious risk of flight"); United States v. Epstein, 155 F. Supp. 2d 323, 326 (E.D. Pa. 2001) (finding defendant's extensive ties to Brazil, country with

which United States has no extradition treaty, to be "crucial factor" in denying bail).  Given his

absence of any connection to the United States and his extensive ties to Montenegro, the

defendant constitutes a significant risk of flight.

           Finally, any proposed use of home detention and/or electronic monitoring would

be wholly inadequate considering the foregoing.  See United States v. Orena, 986 F.2d 628, 632

(2d Cir. 1993) (noting home detention "at best elaborately replicate[s] a detention facility

without the confidence of security such a facility instills"); United States v. Zarrab, No. 15 CR

867 (RMB), 2016 WL 3681423, at *10 (S.D.N.Y. June 16, 2016).  Here, such an arrangement is

wholly inadequate to ensure that the defendant will not flee from justice.

IV.    The Defendant Is a Danger to the Community

           The facts and circumstances of this case compel the defendant's detention, as the

factors set forth in the Bail Reform Act show that his criminal activity and narcotics trafficking

poses a danger to the community.  At the outset, the serious nature and circumstances of the

charged offenses—conspiracy to violate and substantive violations of the MDLEA involving the

international distribution of tons of cocaine—is self-evident.  Individuals, like the defendant,

who are involved in this level of narcotrafficking are responsible for the movement of millions of

dollars' worth of dangerous drugs, and sophisticated narcotrafficking organizations like the

defendant's routinely employ threats of violence and violence in the course of their business.

Additionally, the defendant and his co-conspirators peddle deadly products, which have

contributed to the overdose and drug addiction crisis in the United States and throughout the

world.

           The weight of the evidence against the defendant is strong and also favors

detention.  It includes, without limitation: (1) cooperating witness testimony that can speak

specifically to the defendant's role coordinating the rendezvous of go-fast boats and the large commercial maritime vessel used to transport the cocaine, and providing them guidance as to how to avoid detection while loading significant quantities of cocaine on the open water; and (2) electronic communications, in which the defendant discusses with and instructs conspirators concerning the charged drug loads; and (3) documentary evidence including evidence tying the defendant to his aliases.  The recorded communications include specific discussion of the defendant's role in the conspiracy, including his instructions concerning how to most effectively avoid detection while loading cocaine onboard vessels, and his provision of the vessel's planned route so the go-fast boats could effectively rendezvous along its path.

The defendant's position as a significant narcotrafficker for Balkan cartels also speaks to his and his conspirators' dangerousness.  Broadly speaking, their drug distribution conduct presents a clear and widespread danger to the community.

The defendant's release also poses a danger to the community given the ease with which he can continue to engage in criminal conduct if released by, among other things, directing conspirators to continue engaging in narcotics trafficking on his behalf.  See Millan, 4 F.3d at 1048 ("dangerousness" encompasses "'the danger that the defendant might engage in criminal activity to the detriment of the community'" (quoting legislative history)); Leon, 766 F.2d at 81 (dangerousness includes "the harm to society caused by [the likelihood of continued] narcotics trafficking").   That danger is particularly pronounced here given the defendant's access to narcotraffickers across South America and Europe.

In sum, the defendant would undoubtedly present a significant danger to the community.  No condition or combination of conditions can assure its safety.

12

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court order the defendant to be detained permanently pending trial, as there is no condition or combination of conditions that could reasonably assure the safety of the community or the defendant's appearance at trial.

Dated: Brooklyn, New York
         July 26, 2024

                                         Respectfully submitted,

                                         BREON PEACE
                                         UNITED STATES ATTORNEY
                                         Eastern District of New York
                                         271 Cadman Plaza East
                                         Brooklyn, New York 11201

                        By:        /s/Nomi Berenson
                                         Nomi Berenson
                                         Robert Pollack
                                         Assistant U.S. Attorneys
                                         (718) 254-7000